
FILED

AUG 29 2018

Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 17-51-BLG-SPW |
|---|---|
| Plaintiff/Respondent, | CV 18-09-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| LENRAY JESS TWO TWO, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Lenray Jess Two Two's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Two Two is a federal prisoner proceeding pro se.

In reviewing the motion, the Court has refreshed its memory by consulting the rough transcript of Two Two's change of plea and sentencing hearings. Pursuant to 28 U.S.C. § 753(f), the United States will be required to order the transcripts for the Court's file and for Two Two.

## I. Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A

1

petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On April 20, 2017, a grand jury indicted Two Two on one count of aggravated sexual abuse, a violation of 18 U.S.C. § 2241(c) (Count 1), and one count of abusive sexual contact, a violation of 18 U.S.C. § 2244(a)(5) (Count 2). Both counts were based on a course of conduct from the fall of 2016 until January 23, 2017. The crimes were alleged to have occurred on the Northern Cheyenne Indian Reservation. Jurisdiction was predicated on the Indian Major Crimes Act, 18 U.S.C. § 1153(a). Assistant Federal Defender Gillian Gosch was appointed to represent Two Two. *See* Indictment (Doc. 1) at 2; Order (Doc. 7) at 1.

If convicted on Count 1, Two Two faced a mandatory minimum penalty of 30 years in prison and a maximum of life. *See* 18 U.S.C. § 2241(c). If convicted on Count 2, Two Two faced no mandatory minimum and a maximum of life. *See*

*id.* § 2244(a)(5).

On June 14, 2017, the parties filed a fully executed plea agreement. Two Two agreed to plead guilty to Count 2, abusive sexual contact, and the United States agreed to dismiss Count 1. *See* Plea Agreement (Doc. 15) at 2 ¶ 2. The parties agreed to a sentence of 180 months in prison under Federal Rule of Criminal Procedure 11(c)(1)(C), meaning that Two Two could withdraw his guilty plea and proceed to trial if the Court rejected the plea agreement. *See id.* at 2-3 ¶ 3. Two Two agreed to obtain a sex offender evaluation and to share the results with the United States, the Probation Office, and the Court. *See id.* at 8 ¶ 11. He also acknowledged that his conviction would require him to register as a sex offender. *See id.* at 8-9 ¶ 12. Two Two pled guilty in open court on June 27, 2017. *See* Minutes (Doc. 18).

At sentencing, the Court adopted the presentence report without change and accepted the plea agreement. Two Two's advisory guideline range was 235 to 293 months. *See* Statement of Reasons (Doc. 34) at 1 §§ I, III. Pursuant to the plea agreement, Two Two was sentenced to serve 180 months in prison, to be followed by a ten-year term of supervised release. *See* Judgment (Doc. 33) at 2-3.

Two Two did not appeal. His conviction became final on November 23, 2017. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on January 19, 2018. *See* 28 U.S.C. § 2255(f)(1).

### III. Claims and Analysis

Two Two claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Two Two must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

#### A. Indian Status and Jurisdiction

A common theme among all of Two Two's allegations is the proposition that criminal penalties are "targeted" at Indian persons and constitute discrimination on the basis of "race and class." If these allegations were true, "the very initiation of the proceedings" against Two Two would "operate[] to deprive him of due process of law." *See Class v. United States*, __ U.S. __, 138 S. Ct. 798, 803 (2018) (quoting *Blackledge v. Perry*, 417 U.S. 21, 30-31 (1974)). Regardless of his guilty plea, he would be entitled to relief. But they are not true.

#### 1. Racial Classification

"[F]ederal regulation of Indian affairs is not based upon impermissible classifications. Rather, such regulation is rooted in the unique status of Indians as 'a separate people' with their own political institutions." *United States v. Antelope*,

4

430 U.S. 641, 646 (1977). Under the Major Crimes Act, defendants are "not subjected to federal criminal jurisdiction because they are of the Indian race but because they are enrolled members of [a federally recognized] Tribe." *Id.*; *United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc); *see also* Offer of Proof (Doc. 16) at 4 ("Two Two is an enrolled member of the Northern Cheyenne tribe.").

Two Two does not elaborate on his claim regarding class. It need not be addressed.

The law did not and does not support Two Two's claim of invidious discrimination. For the same reason, it was not unreasonable for counsel to fail to raise the arguments, and Two Two was not prejudiced. Neither prong of the *Strickland* test is met. All claims of this nature are denied.

### 2. Contracts, Compacts, and Treaties

Two Two also contends that he was unfairly disadvantaged by various agreements between federal authorities and tribal authorities. No contract or treaty changed the elements of the crimes charged against Two Two or the required procedures, evidentiary burdens, or standards of proof. He received "the same procedural benefits and privileges as all other persons within federal jurisdiction," subject to "the same body of law as any other individual, Indian or non-Indian, charged with [a federal crime] committed in a federal enclave." *Antelope*, 430

5

U.S. at 648; *see also, e.g.*, 18 U.S.C. §§ 7, 13, 1152.

Two Two repeatedly refers to "the 'bad men' clause of the Northern Cheyenne Indian Treaty." Assuming Two Two is referring to the Fort Laramie Treaty of May 10, 1868, between the United States and the Northern Cheyenne and Northern "Arapahoe" Tribes, its "bad men" clause says:

> If bad men among the Indians shall commit a wrong or depredation upon the persons or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws; and in case they willfully refuse to do so, the person injured shall be reimbursed for his loss from the annuities or other moneys due or to become due to them under this or other treaties made with the United States.

Treaty of Fort Laramie with the Northern Cheyenne and Northern Arapahoe Tribes, May 10, 1868, art. I para. 2, 1868 WL 10239, 15 Stat. 655.

In *United States v. Drapeau*, 414 F.3d 869, 877-78 (8th Cir. 2005), the Eighth Circuit Court of Appeals interpreted identical language in a treaty concluded at Fort Laramie between the United States and the "different bands of the Sioux Nation of Indians," twelve days before the treaty between the United States and Northern Cheyenne Tribe. The *Drapeau* court held:

> The plain language of the treaty . . . does not create the sort of "notice" requirement that Drapeau envisions. The treaty does not say that the United States must give notice to an Indian tribe before the government may arrest and prosecute a tribal member who has violated the federal drug trafficking laws. Rather, the treaty imposes

6

*an obligation on the tribe* to "deliver up the wrong-doer to the United States," upon proof and notice to the tribe.

*Id.* at 878 (emphasis in original) (interpreting Treaty of Fort Laramie with the different Tribes of the Sioux Nation of Indians, Apr. 29, 1868, art. I, para. 2, 1868 WL 24284, 15 Stat. 635).

Likewise, in Two Two's case, the plain language of the treaty does not condition the United States' ability to arrest and prosecute a tribal member who has violated other federal criminal laws. Again, it was not unreasonable for counsel to fail to raise these arguments. The law did not and does not support them. For the same reason, there is no reasonable probability Two Two was prejudiced. Neither prong of the *Strickland* test is met.

### 3. Conclusion

All claims alleging race- or class-based discriminatory purpose or impact in Two Two's prosecution or sentence—including but not necessarily limited to the United States' failure to disclose federal contracts, compacts, or treaties, *see* Mot. § 2255 (Doc. 35) at 4-5 ¶ B; Two Two's conditions of supervised release, *id.* at 8 ¶ E, including sex offender registration, *see id.* at 4 ¶ A; the means and course of the investigation, *id.* at 8-9 ¶ F; and "enhanced charging and enhanced sentencing" under various federal laws, *id.* at 4-5 ¶ B, 10 ¶ G—are denied.

### B. *Miranda* Claim

Two Two might be understood to claim the United States "fail[ed] to

provide [him] with *Miranda* rights . . . and/or provid[ed] [him] . . . with vague waiver of rights that did not protect his right to counsel." Mot. § 2255 (Doc. 35) at 9 ¶ F para. 5; Two Two Decl. (Doc. 35) at 15.

At the change of plea hearing, under penalty of perjury, Two Two agreed he gave a "post-Miranda recorded interview." *See* Offer of Proof (Doc. 16) at 4. The Court will therefore address only his allegation that the *Miranda* warning was inadequate, not his allegation that it was not provided at all. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Under § 2255, Two Two cannot prevail solely by demonstrating that his statement was made with inadequate *Miranda* safeguards. He pled guilty. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Class*, 138 S. Ct. at 803-05 (distinguishing constitutional violations waived by guilty plea from those that are not waived).

A guilty plea does not waive the defendant's opportunity to "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" defining the "wide range of reasonable professional assistance." *Id.* at 267. But the guilty plea means Two

Two must show not only that the claim he abandoned by pleading guilty had merit but also that his attorney's advice to plead guilty without having litigated the claim "rendered that advice outside the range of competence demanded of attorneys in criminal cases." *Id.* at 268 (internal quotation marks omitted).

Under the circumstances here, even assuming the *Miranda* waiver was inadequate, Two Two cannot show a reasonable probability he would have gone to trial. In connection with his *Miranda* claim, as with all his other claims, he asserts that "he would not have plead guilty and he would have elected to proceed to trial" if he had known at the time of his guilty plea what he knows now. *See* Mot. § 2255 at 9. But the test is an objective one. *See, e.g., Strickland*, 466 U.S. at 695. The question is whether a reasonable person in Two Two's position might reasonably have decided to stand trial, and that includes an assessment of whether a *Miranda* violation "would have led counsel to change [her] recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985).

It is always possible that witnesses will not say at trial what they have said before trial, and even if they are consistent, it is always possible one or more jurors may not believe them. But there is no particular reason to suppose a jury would have acquitted Two Two after hearing testimony from his nine-year-old victim and her eleven-year-old sibling and possibly from others who heard their statements before trial. Nothing in the record of the case or in Two Two's current allegations

suggests he had a defense or could have introduced relevant evidence against the victim or in his own favor.

On the other hand, Two Two received an extremely favorable plea offer. Had he been convicted on Count 1 at trial, he faced a *mandatory minimum* sentence of 30 years. As the crimes were alleged to have occurred on multiple occasions over a period of time, he could have been convicted on both Count 1 and Count 2. Even if he were convicted only on Count 2, his advisory guideline range likely would have been 324 to 405 months, because he probably would not have received credit for acceptance of responsibility. *See* Presentence Report ¶¶ 26-27; U.S.S.G. § 3E1.1. The plea agreement ensured Two Two a much lower sentence than he was otherwise likely to receive—nearly five years less than the low end of the advisory guideline range that would have applied with a guilty plea but without the plea agreement, and 12 years less than he stood to receive if convicted only on Count 2 at trial. And if he had not received that much lower sentence of 180 months, he would have retained his opportunity to take his chances at trial.

Few competent attorneys would have advised Two Two to reject the plea offer for the sake of litigating the adequacy of his *Miranda* waiver. There is no support for an inference either that counsel's advice to plead guilty was unreasonable or that there was a reasonable probability Two Two would have rejected the plea offer and proceeded to trial had he known counsel could have

10

contested the *Miranda* warning. Two Two's guilty plea was knowing, voluntary, and intelligent. This claim is denied.

**C. Sentencing Claims**

Two Two also contends that counsel was ineffective at sentencing. These claims are hard to understand, because Two Two received the sentence he bargained for. Nonetheless, each claim is considered.

Two Two claims counsel should have called an expert witness to identify mitigating and "negating" factors and to address the obligation to register as a sex offender. *See, e.g.*, Mot. § 2255 at 4 ¶ A. The sentence Two Two bargained for already fell considerably below the low end of the advisory guideline range, and that is the sentence he received. Advocating for a lesser sentence would have breached the plea agreement, freeing the United States not only to seek a guideline sentence or even an upward variance, but also to prosecute him on Count 1, with its mandatory minimum sentence of 30 years. *See* Plea Agreement (Doc. 15) at 9 ¶ 13. And there is no reason to suppose he might have obtained a sentence less than 180 months. Neither prong of the *Strickland* test is met.

As for Two Two's obligation to register, it was imposed by statute. His conviction of the lesser offense in Count 2 made him a Tier II sex offender. *See* 18 U.S.C. § 2244; 34 U.S.C. § 20911(3)(A)(iv). He must register for 25 years, and the time may not be reduced. *See id.* § 20915(a)(2), (b). No expert testimony

11

would mitigate or negate these requirements. Neither prong of the *Strickland* test is met. This claim is denied.

Two Two claims counsel should have challenged one or the other of the two four-level guideline enhancements he received. (He does not say which one.) He claims the enhancement depended on "vague statutory construction of Montana state sex offender laws." Mot. § 2255 at 6-7 ¶ C. No enhancement had anything to do with Montana state law. *See* Presentence Report ¶¶ 18-20. And, again, Two Two was not sentenced under the guideline regime but received the sentence he bargained for. Neither prong of the *Strickland* test is met. This claim is denied.

Finally, Two Two claims counsel should have objected to his criminal history category. *See* Mot. § 2255 at 7 ¶ D. Neither the meaning of the phrase "serious bodily injury" nor the cases of *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), or *Buck v. Davis*, __ U.S. __, 137 S. Ct. 759 (2017), had anything to do with Two Two's criminal history score. He received three points for his 2005 felony conviction for assault resulting in serious bodily injury under 18 U.S.C. § 113(6), because he was sentenced to more than a year and a month in prison and the sentence was imposed within fifteen years of the commencement of the offense in this case. *See* U.S.S.G. §§ 4A1.1(a), 4A1.2(e)(1); Presentence Report ¶ 31. Neither prong of the *Strickland* test is met. This claim is denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Two Two's claims do not meet even the relatively low threshold required for a COA. Although his arguments concerning racial and class discrimination are not waived by his guilty plea, *see Class*, 138 S. Ct. at 803-05, they are not supported by existing law. His claim that he did not receive a good enough *Miranda* warning does not bring into question the voluntariness of his guilty plea. And Two Two's sentencing claims are essentially irrelevant to his case. Reasonable jurists would find no basis to disagree with the denial of these claims and no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Pursuant to 28 U.S.C. § 753(f), the Court CERTIFIES that the transcripts

of the change of plea hearing, held June 27, 2017, and the sentencing hearing, held November 9, 2017, are required to decide the issues presented by Two Two.

2. The United States shall immediately order the transcripts of those hearings for the Court's file, with copies to be delivered to Lenray Jess Two Two, BOP # 08528-046, FCI Mendota, Federal Correctional Institution, P.O. Box 9, Mendota, CA 93640.

3. Two Two's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 35) is DENIED.

4. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Two Two files a Notice of Appeal.

5. The Clerk of Court shall ensure that all pending motions in this case and in CV 18-09-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Two Two.

DATED this 29th day of August, 2018.

Susan P. Watters
United States District Court